J-A07024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TINEIKA WILLIAMS, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF NICK-A-LEEN BISHOP-WILLIAMS, DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| | : | No. 396 EDA 2021 |
| THE GEO GROUP, INC.,  GEO CORRECTIONS AND DETENTIONS, LLC., TIFFANY THOMAS, COMMUNITY EDUCATION CENTERS INC.,  GEO CORRECTIONAL HOLDINGS INC, GEO OPERATIONS INC.,  AND GEO REENTRY SERVICES, LLC | : : : : : : : : : | |
| APPEAL OF: THE GEO GROUP, INC., AND GEO CORRECTIONS AND DETENTIONS, LLC. | : : : : | |

Appeal from the Order Entered December 31, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 181201156

| | | |
|---|---|---|
| TINEIKA WILLIAMS, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF NICK-A-LEEN BISHOP-WILLIAMS, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| | : | No. 397 EDA 2021 |
| THE GEO GROUP, INC. | : : | |
| Appellant | : | |

Appeal from the Order Entered December 31, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180500207

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 26, 2022**

The GEO Group, Inc., GEO Corrections and Detentions, LLC., Tiffany Thomas, Community Education Centers Inc., GEO Correctional Holdings Inc., GEO Operations Inc., and Geo Reentry Services, LLC (collectively "GEO") appeal from the order granting Tineika Williams' ("Williams") discovery motion and compelling the production of evidence. GEO challenges the trial court's finding that the evidence was relevant and not privileged. We affirm.

The underlying cause of action in this case is one sounding in negligence in connection with a prison inmate's suicide. In February 2018, Williams' son, Nick-A-Leen Bishop Williams ("Decedent") committed suicide in his cell at the George W. Hill Correctional Facility ("Prison") in Delaware County. The Prison is a private prison operated by the GEO Group, Inc. Williams alleges that Decedent covered the window of his cell and the officer on duty, Tiffany Thomas, failed to intercede.

Williams filed two suits against the various defendants and the trial court consolidated the cases. In January 2019, Williams served GEO with interrogatories and requests for production of documents. Ultimately, GEO provided all requested materials except a report called a "psychological autopsy" ("Report"). GEO asserted that the Report was privileged as a peer review document, as a work product document, and due to the attorney-client privilege.

Williams filed a motion to compel in November 2019, seeking the Report. After a hearing, the trial court ordered GEO to provide an affidavit setting forth any factual basis for its claims of privilege. GEO provided the affidavit of Dr. Eugene Hermann, who helped author the Report. Dr. Hermann stated that GEO Group's Director of Behavioral Health Services, its Chief Medical Officer, its Manager of Behavioral Health Services, and Vice President of Health Services conducted a peer review of the circumstances surrounding Decedent's death. Affidavit of Dr. Hermann at ¶ 6. According to Dr. Hermann, this committee reviewed Decedent's records, the critical incident report, and the written statements of prison staff and inmates. *Id* at ¶ 8. Dr. Hermann admitted that the Report was prepared following Williams' request for the preservation of evidence should she institute a lawsuit. *Id.* at ¶ 5. Dr. Hermann noted that legal counsel was consulted regarding the Report. *Id*. at 11.

Williams responded by submitting a transcript of the deposition testimony of the Prison's mental health coordinator, Raequel Madara, LCSW. She had testified that the preparation of the Report was required under the Prison's suicide prevention policy. Madara explained that the policy required the preparation of a "psychological autopsy" following any suicide and that she had previously prepared such a report regarding another inmate's suicide. According to Madara, she had never heard anyone refer to a "psychological autopsy" as a product of peer review. Instead, she asserted

that the Report was prepared in accordance with the Prison's own internal process.

After consideration of both parties' supplemental briefs, the trial court ultimately granted Williams' motion and compelled production of the Report. The instant appeal[1] followed. Both Williams and the trial court complied with Pa.R.A.P. 1925. GEO raises the following issues:

> 1. Did the trial court err in failing to apply the Peer Review Protection Act to bar the discovery and production of the "Psychological Autopsy" prepared by the Appellant GEO Corrections and Detentions, LLC's peer review committee?

> 2. Did the trial court err when it granted [Williams'] Motion to compel the "Psychological Autopsy" when, in the alternative to finding that the Peer Review Protection Act did not apply, it failed to find that the document was prepared in expectation for litigation and precluded under Pennsylvania Rule of Civil Procedure 4003.5?

> 3. Did the trial court err when it granted Appellee's Motion to Compel the "Psychological Autopsy" wherein it failed to account for the fact that [Williams] voluntarily waived all claims against the medical staff and medical departments and thus any medical document which evaluated the medical staff was irrelevant?

Williams' Br. at 6.

_____

[1] As a prefatory matter, we note that while the instant discovery order is interlocutory, this appeal is properly before us because it is from a collateral order. A trial court order rejecting the assertion of a privilege and requiring the disclosure of documents constitutes an immediately appealable, collateral order. **See** Pa.R.A.P. 313(a); **see Leadbitter v. Keystone Anesthesia Consultants, Ltd.**, 256 A.3d 1164, 1167-68 (Pa. 2021) (permitting interlocutory appeal of an order rejecting the assertion of the Peer Review Protection Act evidentiary privilege and requiring the disclosure of documents).

In the first issue, GEO claims that the trial court erred by concluding that the Report was not privileged under the Peer Review Protection Act ("PRPA"), 63 P.S. §§ 425.1–425.4. GEO contends it constitutes a "professional health care provider" because it operates the Prison and thereby, the Prison's state-regulated health care facility. GEO also maintains that the court misapprehended Dr. Hermann's affidavit as indicating the Report was prepared for purposes of litigation. GEO asserts that even though Dr. Hermann admitted that he was aware of the possibility of litigation, he properly asserted that the Report was prepared by a "peer review committee" for purposes of improving the quality of care at the Prison and reducing future inmate injuries and death. GEO's Br. at 12-14.

When reviewing the propriety of a discovery order, we employ an abuse of discretion standard. *Virnelson v. Johnson*, 253 A.3d 707, 713 (Pa.Super. 2021). However, whether a privilege protects a communication from disclosure is a question of law. *Yocabet v. UPMC Presbyterian,* 119 A.3d 1012, 1019 (Pa.Super. 2015). When reviewing a question of law, our standard of review is *de novo,* and our scope of review is plenary. *Id.*

It is well settled that evidentiary privileges are not favored. *BouSamra v. Excela Health*, 210 A.3d 967, 975 (Pa. 2019). "Courts should permit utilization of an evidentiary privilege only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Id.* (quotation marks and citation omitted).

- 5 -

The PRPA provides the following evidentiary privilege:

**§ 425.4 Confidentiality of review organization's records**

The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, [t]hat information, documents or records otherwise available from original sources are not to be construed as immune from discovery or used in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4.

A "review organization" is defined as:

any committee engaging in peer review [(the definition goes on to list several examples of committees engaged in peer review)] to gather and review information relating to the care and treatment of patients for the purposes of[:] *(i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care.* It shall also mean any hospital board, committee[,] or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto. It shall also mean a committee of an association of professional health care providers reviewing

the operation of hospitals, nursing homes, convalescent homes[,] or other health care facilities.

63 P.S. § 425.2 (emphasis added).

Our Supreme Court has recently discussed the reasoning underlying the enactment of the PRPA:

[T]he enactment [of the PRPA] stems from the dual observations that: the practice of medicine is highly complex and, as such, the medical profession is in the best position to police itself; and, the profession's self-regulation is accomplished, at least in part, through a peer-review mechanism undertaken to determine whether a particular physician should be given clinical privileges to perform a certain type of medical activity at a hospital[.] The purpose of this privilege system is to improve the quality of health care[.] Thus, it is beyond question that peer review committees play a critical role in the effort to maintain high professional standards in the medical practice[.]

Against this background, the PRPA is designed to foster candor and frankness in the creation and consideration of peer-review data by conferring immunity from liability, as well as confidentiality - all with the objectives of improving the quality of care, reducing mortality and morbidity, and controlling costs. [T]he PRPA is an act providing for the increased use of peer review groups by giving protection to individuals and data who report to any review group[.] These types of protections are viewed as helpful in fostering effective peer review because of the perceived reluctance of members of the medical community to criticize their peers and take corrective action.

*Leadbitter*, 256 A.3d at 1168-69 (citations, ellipsis, original brackets, and original quotation marks omitted).

In this case, the trial court found that the Report was not prepared as a function of peer review and therefore was not privileged under the PRPA.

- 7 -

We concur.[2] As recognized by the court, the PRPA extends privilege only to materials prepared in furtherance of "(i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care." *See* 63 P.S. § 425.2. Here, the trial court credited the deposition testimony of Raequel Madara, LCSW, who stated that the Report was not the product of peer review but instead the result of the Prison's routine internal policies following an inmate's death.

Moreover, the court emphasized that even the affidavit of the Report's contributing author, Dr. Hermann, alluded to the fact that the Report was generated by reviewing various materials, both medical and non-medical, following a request for the preservation of evidence in anticipation of Williams' potential litigation. Hence, ample evidence supported the court's determination that the purposes underlying the enactment of the PRPA, which concerns the self-policing of medical professionals in a bid to improve medical care, were not the motivation behind the drafting of the instant Report. *See Leadbitter*, 256 A.3d at 1168-69. Thus, we conclude that the trial court did not err by finding that the PRPA did not preclude discovery of the Report in this case. Therefore, GEO's first issue does not warrant relief.

_____

[2] In light of our holding, we need not address Williams' contention that the trial court also erred by determining that the PRPA was not applicable to this case because GEO did not constitute a "medical provider" as defined under the PRPA.

Next, GEO claims that if the Report is not privileged pursuant to the PRPA, then the trial court should have considered it privileged under Pennsylvania Rule of Civil Procedure 4003.5. GEO maintains that if Dr. Hermann did author the Report for purposes of litigation, as concluded by the trial court, and GEO does not intend to call him to testify as an expert at trial, then his Report would not be discoverable pursuant to Rule 4003.5.

Pennsylvania Rule of Civil Procedure 4003.5 states, in relevant part:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

. . .

(3) A party **may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial**, except a medical expert as provided in Rule 4010(b) except on order of court as to any other expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

Pa.R.C.P. 4003.5(a)(3) (emphasis added).

Rule 4003.5's official comment explains that a "regular employe [sic] of a party who may have collected facts, prepared reports and rendered opinions, and who may be qualified as an expert" is not covered by Rule 4003.5(a)(3) and "has no immunity from discovery, simply because the party elects not to call him at trial," because such an employee "is not an

'expert' within the meaning of the Rule." *Id.* at explanatory cmt. (1978). For example, in *Virnelson*, a consultant who was not retained as an expert for purposes of litigation was not immunized from discovery by Rule 4003.5(a)(3). *Virnelson*, 253 A.3d at 715.

Here, the trial court properly found that the Report was not subject to Rule 4003.5 because Dr. Hermann and the rest of the contributors to the Report were acting in the regular course of their employment with GEO. Thus, they did not qualify as "experts retained or specially employed by another party in anticipation of litigation," as specified under Pa.R.C.P. 4003.5(a)(3). Therefore, Rule 4003.5 does not preclude discovery of the Report. *See Virnelson*, 253 A.3d at 715. GEO's second issue also lacks merit.

In their third issue, GEO contends that the Report was not relevant to Williams' cause of action and therefore out of the realm of allowable discovery in any event. They point out that Williams did not present an action that sounded in medical malpractice but instead solely in negligence. Therefore, the Report, which GEO asserts primarily concerns mental health care, is not relevant to Williams' cause of action. To this end, GEO emphasizes that no medical personnel interacted with the Decedent at the time of his suicide, only correction officers. GEO also points out the more stringent standard litigants must meet in order to prove negligence in the context of suicide.

"[A] party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Pa.R.C.P. 4003.1(a). A discovery request is not objectionable on the ground that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Pa.R.C.P. 4003.1(b). Nor is it a ground for objection (other than as provided by the Rules of Civil Procedure) that the information sought involves an opinion or contention that relates to a fact or the application of law to fact. Pa.R.C.P. 4003.1(c).

In this case, the trial court aptly found that the Report was relevant under Rule 4003.1:

> Here, a psychological autopsy following an inmate's death at a prison would be highly relevant information to discover. Psychological autopsies are performed in order to obtain a complete picture of all the facts and circumstances surrounding a death. Dr. Hermann stated in his affidavit that the psychological autopsy process involved reviewing the medical records of Mr. Bishop-Williams, the critical incident report, and written statements made by staff and inmates. Therefore, the information goes beyond the medical care on the night of the incident and contains information that is not in the medical records that have already been produced. Additionally, the autopsy can help establish what institutional policies and protocols were and were not followed surrounding the [D]ecedent's suicide. The psychological autopsy can help determine if the appropriate standard of care was not met. As a result, this information is highly relevant to a negligence action.

- 11 -

> [GEO's] claim that suicide is almost never a basis for recovery in wrongful death cases has no bearing on the present issue of the psychological autopsy's relevance. Whether [Williams] has a claim for negligence is not something this Court is considering in ruling on the discoverability of the psychological autopsy. Relatedly, the fact that no medical providers have been brought into the suit does not bear on the psychological autopsy's relevance. Rule 4003.1 notes that as long as the information is not privileged and relevant to the subject matter involved in the pending action, the item is discoverable. Pa.R.C.P. 4003.1. Because this psychological autopsy is informative of the subject matter in the pending action, namely the circumstances surrounding [D]ecedent's suicide, the information is relevant.

Trial Ct. Rule 1925(a) Op., 6/28/21, at 14-15.

We agree with the trial court that the Report was relevant for discovery purposes, pursuant to Rule 4003.1. Accordingly, GEO's third issue must also fail. We affirm the order of the trial court granting Williams' motion to compel discovery of the Report.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2022

- 12 -